All right. Will the attorneys please step up to the podium? Will you tell the court your name, who you represent, and approximately how much time your argument will take? Good morning, counsel. Good morning, Your Honor. My name is Mark Beam. I represent Church Street Plaza, SPE, LLC. Also known as Zachary Freeman. And I expect our argument will be about 20 minutes, of which I'd like to reserve 5 minutes for rebuttal. Let's say 15 and 5. Okay. Very good. Good morning, counsel. Good morning, Your Honor. It's Christy Nelson on behalf of the defendant, Century Theatres, Inc. Also with me at counsel table is Gerald Lurie on behalf of the defendant, Appley, as well. I would expect my argument to take approximately 20 minutes. Very good. Mr. Beam, you may proceed with your argument. For my benefit, would you keep your voices up? Thank you. I should advise the attorneys that the court has read the briefs, were familiar with the facts of this case, and I simply suggest that you get right to your argument. But please proceed. Getting right to the heart of the argument, Your Honor. The date of the agreement that CSP, Church Street Plaza, SPE, LLC, seeks to enforce in this case, and the date of the written instrument that Church Street seeks to reform, and therefore the earliest date that the statute of limitations could have begun to run, is August of 1999, when the first amendment to lease agreement was executed. A cause of action for repression. Parties apparently agreed to modify 6.3? The parties agreed to modify, yes, Your Honor. Some sort of letter was sent, but it wasn't mentioned in the letter? The letter said that the formula for computing real estate taxes and common area expenses should both be changed in order to make the, make there a match between the size of the building on which the taxes were assessed and the expenses were incurred. Thank you. The letter is not, is evidence of the parties' agreement. It is not the agreement in and of itself. The denominator, which stood for the entire rentable area of that one building, would be $150,000. Okay. Counsel, as Justice Murphy pointed out, the letter refers to real estate taxes and operating expenses, but it makes no reference to Section 6.3 of the lease, correct? That's correct. It makes no reference. Does that make a difference? I don't think it does, Your Honor. It doesn't make a reference to Section 1.2 of the lease either, or the recitals of the lease, which were the mechanics by which the agreement of the parties was carried out. The letter was Church Street Plaza saying to Century, we think this lease doesn't work. It doesn't make sense given the way the project has been developed. It's inconsistent with what we were talking about in terms of Century's pro rata share of real estate taxes and common area expenses. Subsequent to that letter, we are at the pleading stage, Your Honor, so we don't have the, I can't recite to you what the negotiations were, but there were discussions between the parties between June and August, and as a result of those discussions, a lease amendment was prepared that addressed a number of issues. It addressed construction schedules. It gave Century some more money for its construction build-out. It provided what the acoustical standards were going to be and who was going to be responsible for meeting those standards, which are an important element in a multi-screen theater where you don't want the noise from transformers interrupting the soft, weepy movie next door. And it made changes to the computation of common area maintenance, Century's share of common area maintenance expenses. And what fact would you point to to indicate to the Court that both parties were aware that a mutual mistake had been made? Your Honor, we don't have a factual record here. We have alleged in the complaint that it was a result of a mutual mistake, or this is in paragraph 25 of the complaint, that Century was aware of our mistake and wrongfully failed to disclose it to us. There's been no challenge by Century, no discussion in the trial court of the sufficiency of those allegations to state a claim for reformation. Okay, proceed. I think this would solve it pretty rapidly. The trial judge had a, was it Bainon? Yes. Bainon. We don't have to. Why should we not follow Bainon? Well, Your Honor, this Court doesn't have to reach Bainon unless it finds that the statute of limitations period began to run in February of 1999 when the original lease agreement was executed. Because if, as we believe is clearly the correct conclusion, the limitations period began to run in August of 1999, this lawsuit is timely without regard to the discovery rule, which is what Bainon is about. What if we don't want to apply the discovery rule? We just follow Bainon? If this Court follows Bainon, then our lawsuit is still timely because the suit, the agreement that we seek to reform, the written instrument we seek to reform, and the agreement we seek to enforce was the agreement the parties reached in August of 1999, which is less than 10 years before the suit was filed after giving effect to the tolling codes. If we follow the trial court, affirm the trial court, Your Honor, right? I'm sorry? If we affirm the trial court. If you affirm the trial court, our lawsuit is dismissed with prejudice. Pardon? Then this lawsuit is over. We've been dismissed with prejudice. That's what the trial court did. Why should we follow and affirm the trial court? Why should we not follow the trial court? You should not follow the trial court. We will follow and affirm. The trial court erred in its conclusion that the limitations period began in February 1999. And that's the law of the land right now. That's the ruling of the trial court. No, I meant Bainon is the law of Illinois right now. Bainon is not material. First of all, Bainon is not the law of Illinois. Bainon found that as a category, lawsuits for reformation of contract are not subject to the discovery rule. That is that the limitations period in Bainon in reformation actions always begins to run on the date of execution of the agreement that is sought to be reformed. That's actually dictum in Bainon because the Bainon court didn't dismiss the case. It found that the defendant was a stop to raise the statute of limitations issue. So if that's a holding of Bainon, it is nevertheless inconsistent with this court's holding in the Shands case, which applied the discovery rule to a reformation action. And it's also contrary to the Supreme Court's ruling in Hermitage in which he said that the question of the applicability of the discovery rule ought to be based on whether the circumstances that warrant application of the discovery rule exist without regard to the specific category of lawsuit and category of claim that's being asserted. But again, Your Honors, there's not a need to reach Bainon and resolve what I think is a conflict between this court and the second district because the proper date for the commencement, the earliest date for the commencement of the limitations period, was the date of execution of the agreement that the plaintiff seeks to reform. That agreement is the First Amendment to lease agreement, which created what we refer to in our brief as the capital L lease, which is the original lease agreement as amended by the First Amendment. That document didn't exist until the First Amendment was executed in August of 1999. And as I said, this lawsuit is timely without regard to the discovery rule if the limitations period began running in August of 1999. Both Hermitage, I think you pronounce it Shons? Shons, yes. Both said we do this to eliminate harsh results. What are harsh results in this case? The harsh result, Your Honor, is that the plaintiff does not get its claim heard on the merits. It's in the discovery rule. The trial court ruled that the discovery rule was inapplicable. There's not been factual development of all of the circumstances, but among the circumstances we know is that Century timely paid its taxes, its real estate taxes as if the amendment were the way we said it should be until 2002, at which point it changed its tune and started insisting on paying on the basis of a 185,000 square foot denominator. Is about a million dollars involved? As of the date of the filing of the complaint, Your Honor. And that's all that benefited Century? It is. Century is the beneficiary of the mistake. They're paying about 81% of, we said in our brief, they're paying about 81% of the real estate taxes that they ought to be paying if they were paying in accordance with the agreement that they made in August 1999 to pay real estate taxes and common area expenses on the same basis, which is the basis of the size of the one building they occupy. Mr. Bean, please tell us, tell this Court, which case you think we should follow and why. Your Honors, I think that probably the most analogous case is the Barrett case, which was not a statute of limitations case, to be sure. Which case is that? Barrett's. Barrett, Your Honor, was Barrett v. Lawrence, 110 Illap 3rd, 587. In the Barrett case, this Court was dealing with a statute that provided that interest that in condominium purchase situations, interest had to be paid on the earnest money if possession was going to be delivered in less than a year and did not have to be paid if the period that the interest between contract date and delivery of the unit was going to be more than a year. And the initial contract called for delivery in less than a year, and there was an amendment to the contract that extended the delivery date and the time between the initial contract and the delivery date under the amended contract was more than a year. And the defendant said we don't have to pay interest. This Court said that's not right. In accordance with Schwinder, which is this Court's discussion of the common law merger doctrine, the execution of the amended contract created a new contract consisting of the amended terms and so many of the other terms as the parties had agreed not to change. The date of that new contract was the date of the amendment and the measuring period, again in this case it was not a limitations period, but it was another time period that began to run on the date of the contract. The measuring period runs from the date of the amendment, not the date of the initial agreement. Counsel, isn't it a fact that the amendment doesn't address that provision of the lease that's really at issue here that concerns the real estate tax? That's the mistake. It should have. We have alleged, and of course we're here on a motion to dismiss, so the well-plaid allegations of our complaint have to be accepted as true. We have alleged that the parties agreed to change the provision on real estate taxes, and by mistake that change was not included in the first amendment to contract. So it's that mistake that we're seeking to reform. And it's that document, the first amendment to lease agreement, that we're seeking to reform. If you ask me what words would I write on what paper in order to accomplish the relief that we're seeking in this lawsuit, it would be to add one more line to paragraph two of the first amendment to lease agreement. That's the paragraph that talks about where $185,000 is going to be stricken out and $150,000 is going to be inserted in its place. And it names two places, but by mistake it failed to name a third place. Now, I imagine Century, when we get to trial on the merits, may argue that there wasn't a mistake, that there was intent, but at this stage in the proceedings we have alleged that there was an intent to include it and a mistaken failure to include it and we're entitled to, we believe we're entitled to, a trial on the merits in which we can establish those facts to the finder effect. The fact that the original lease agreement contained the similar mistake to the one that was made in the initial lease agreement doesn't change the analysis here because the instrument, the written instrument that contained the mistake that we're in this court now seeking to get the right to litigate over and we're in the trial court seeking to reform was the first amendment to lease agreement. And once there was an amendment to the lease agreement, any action brought on the contract or with regard to the contract had to be brought on the contract as amended, which was the lease agreement as amended by the first amendment, which didn't exist until August of 1999. If we had brought suit and the agreement that we are seeking to enforce. The essence of the suit for reformation is that the parties reached an agreement. They agreed to reduce their agreement to a writing and that the writing that was created did not reflect the party's actual agreement. So you start with the party's agreement and the question is, what is the agreement that we're seeking to change a document in order to enforce? The agreement is the agreement that was made in August of 1999 that Century would pay its pro rata share of the real estate taxes on what we've called the pavilion building. If Century has said, oh, but you could have come in and brought this suit earlier, as soon as the original lease was signed, you could have been here. And you could have filed suit. That's when the cause of action accrued. But that's not correct because we are not bringing a suit to enforce an agreement that was made in February of 1999. We're bringing a suit to enforce the agreement that was made in August. In August, the party sat down and said, we're going to change the lease. All of the terms of the lease were up for grabs at that point. The parties could have not reached agreement and not amended the lease at all if they were going to amend the lease. Then they were doing two things. They were agreeing to make certain changes. And with respect to the other provisions of the lease, they were agreeing to leave them the same. But it was a new agreement made as of the date of the amendment. That's the ‑‑ But it says in the agreement, it says all other aspects of the lease are in full force. That's right. That's the agreement they made in August. They said Century and Church Street sat down to negotiate a lease amendment and they agreed that we're going to make these changes and we're going to give Century this additional money for its buildout and we're going to agree to the specifications on acoustics and we're going to agree to change the real estate tax and common area maintenance computation. And they agreed, we're going to agree to leave everything else the same. That's what that phrase says. And it reflects the parties making a new entire agreement as of August of 1999. That's the notion behind the common law merger doctrine. But, Your Honors, even if the common law merger doctrine does not apply, and we believe that it clearly does, but if you were to agree with the trial court that the common law merger doctrine for some reason didn't apply, then we are properly in court on an action to reform the First Amendment to lease agreement as a freestanding independent contract. And it is a valid contractually enforceable agreement. There was offer, acceptance, consideration running both ways, execution by both parties. If there's not a merger into a single lease as amended, which is a merged document that only existed in August of 1999, then the First Amendment to lease agreement is a separate agreement which is properly subject to a suit for reformation because we have alleged that in August of 1999, I've said this to you several times, Your Honors, forgive my repetition, but it's the core of our position. We've alleged that in August of 1999, the parties agreed to make a change in the computation of real estate taxes and to embody that change in the First Amendment to lease and that an amendment to the lease was drafted which mistakenly failed to conform to the party's agreement in August 1999 to change the computation of real estate taxes. When was the mutual mistake discovered by either party? The, Your Honor, in June, well, the mutual mistake in the First Amendment to lease. Not the one you tried to attempt, not the one that you signed. I'm talking about the mutual mistake of not including 6.1 or 6.3. The mistake in the First Amendment to lease was, the only evidence in the record on discovery on that is that in October of 2002, Century First asserted that it didn't have to pay its pro rata share in accordance with the party's actual agreement. But we don't need... This is 2011. What took so long to get here? There's no evidence in the record, Your Honor, of what was transpiring between Century and Church Street. That all would be developed if this case were to reverse. But, Your Honor, with respect to the mistake in the First Amendment to lease, the discovery rule doesn't have to be addressed because the lawsuit was filed within 10 years of the execution of the First Amendment to lease. So the discovery... So even if Bannon were right, which we don't think it is, the suit would be timely based on the date of execution of the First Amendment to lease. We've also... With respect to the comments for the limitations, another reason that the limitations period is... that we're within the limitations period is that Century twice paid real estate taxes as if the agreement were as the parties had agreed and not as it was mistakenly drafted. The discovery rule would favor you, wouldn't it? The discovery rule would favor us. Your Honor, the discovery rule would favor us if... If the date... If the court were to rule, which I don't believe it should, that the cause of action accrued in February of 1999. Because the cause of action accrued in August of 1999, there is no issue of discovery. The lawsuit was filed within 10 years of the execution of the agreement. In addition, the parties agree that the applicable statute of limitations is a 10-year limitations period specified in 13-206 of the Code of Civil Procedure. That's the statute of limitations for actions on written contracts. One of the provisions of 13-206 is the provision that says that if any payment... I'm going to leave out some intermediate words here, but if any payment has been made within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of the payment or promise to pay. That's sort of... It's a statutory provision, not a common law development, but it's similar to the notion of equitable tolling of the statute of limitations. Here, two such payments were made as if the agreement had been written the way the agreement... as if the First Amendment read consistently with the agreement of the parties. That is, as if the computation of the century's share of the real estate taxes was based only on that one building and not on the area of the entire shopping center. Those were the first two payments of real estate taxes that were made under the lease. No prior payments. Initially, there was a period between the execution of the lease and century's occupancy and then a period between occupancy and the beginning of billing for real estate taxes. So nothing was billed, and then when taxes began to be billed, century made two payments in accordance with the actual agreement of the parties that we have alleged, and those payments themselves extended the commencement of the statute of limitations under 13-206. Those payments were made in 2001 and 2002, and the lawsuit is plainly timely filed because of those payments as well. So, as I said, the lawsuit was timely based on the August 1999 date of the First Amendment to lease. We have alleged that that created a new... we've alleged a mistake in that agreement. The court found that the common law merger doctrine didn't apply, and we argued that it does. It created a new integrated agreement as of that date, but that even if it didn't, we pled, as I've just explained to your honors, a claim to reform the First Amendment to lease agreement, which is a separate agreement and a suit to reform that separate agreement is plainly timely. Century has argued below that we did not adequately plead a claim for breach of the First Amendment, for reformation of the First Amendment to lease agreement as a separate agreement. We think that we have. If your honors, we ask the trial court below to permit us leave to file an amended complaint to make it even clearer that we allege a variance in that agreement between the parties agreement and the written document, and that we seek to reform that agreement if it's considered as a separate document and not as a single integrated document. That the trial court denied us leave to file an amended complaint. That complaint, that denial was itself error because although, as Century has pointed out, we made the request for leave to file an amended complaint in a footnote in our motion for reconsideration, we did present to the court a request for leave to file an amended complaint. We explained what we would say in the amended complaint. We explained what the law was that we would argue, and as I said to your honors, a suit for reformation of the First Amendment to lease would plainly be timely, and therefore it was error for the trial court to deny us leave to file an amended pleading to state the basis, to state a viable claim.  What we ask your honors to do today is to reverse the trial court's ruling that the statute of limitations period began on February 23rd, and rule that based on the complaint that we have filed, the limitations period began in August of 1999, and was therefore timely. In defense of the trial court, I still maintain they had to file, they did not. They had to. Well, your honor, I think that this court's ruling in Shantz is inconsistent with Bainon. Shantz is a first district case. Bainon is a second district case. Bainon is also prior to Hermitage, which changed the analysis, the mode of analysis of the discovery rule in Illinois, but I don't think that this court ought to get to that question because our suit was timely without regard to the discovery rule. What was the time between the statute of limitations, if we applied that to the time you both signed the lease, what was the time between that and when you actually filed the lawsuit? Should it have run in June? The discovery, we have alleged that the mistake was discovered in June. I'm not talking about the mistake. Nope. I'm talking about the discovery. When was the lawsuit filed? If we filed Bainon, it would start as soon as the lease was signed. The amendment would not affect the statute of limitations. I'm only asking what is the time the statute of limitations would have run. The statute of limitations would have run. Is it June? Well, it would have run 10 years from August of 1999 plus the tolling. I guess I'm not speaking clearly. Okay. If we follow Bainon. Yes. Which says when the lease was signed, when would the statute of limitations run? On what date? If the lease was, you mean the original lease or Bainon, following Bainon does not lead to finding that the original lease is the date. But if you follow Bainon and conclude that the original lease is the correct date, then the limitations. It escapes me. Was it June of 1999? Yes. And this suit was filed in August? This suit was filed in March. The tolling agreements were executed on June, the first tolling agreement was executed on June 3rd. Okay. And this suit was filed? This suit was filed in March of 2010. There was a tolling agreement in effect from June 3rd through the date of filing. Thank you. Any questions?  You'll reserve five minutes for rebuttal, Mr. Bainon. Yes, Your Honor. Very good. Ms. Nelson. Good morning again, counsel. Good morning, Your Honors. Kristi Nelson on behalf of Century Theater. Keep your voice up. Yes. Thank you. The starting point for determining whether the reformation claim was timely filed is we have to start with the statute, which is Section 13-206. The statute requires an action to be commenced within 10 years after it accrues. So the key question in this case is when did the reformation claim that was pled in the complaint accrue? The trial court correctly determined that it accrued when the parties initially executed the lease agreement on February 23rd, 1999. Now, you have to look at the complaint. Paragraph 25 is the key allegation. And in Paragraph 25, the plaintiff says that Century or I'm sorry, the plaintiff is entitled to reformation of Section 6.3 of the lease to reflect the party's agreement that the tenant must pay its pro rata share of the taxes assessed against the pavilion building. That's what the plaintiff is asking for in this case. They want to reform Section 6.3 based on an alleged mutual mistake that the parties agreed before February 23rd, 1999. That that's how Century would pay its taxes. So. Was there a mutual mistake, counsel? No. I mean, we obviously, if this case were to go forward, our position is there was no mistake. This was a heavily negotiated document with both parties represented by counsel, and there was no mutual mistake. But we're going to take the allegations as they're stated. There was no mistake as to how you were to pay your taxes, how Century was to pay its taxes? There was no mutual mistake. Well, didn't you sign off on the amendment? Yes, we did. But the amendment. Then it was a mutual mistake, isn't it? No, no, no, no. The amendment did not change Section 6.3. There was no. No, it didn't, but that's the mutual mistake. Well, that was not. There was no mutual mistake on our part. There's a letter, though. Yes. And the letter makes reference to the definition of tenants pro rata share of real estate taxes and operating expenses. Were you in agreement that there was a problem with the definition? Well, no, Your Honor. I mean, and that goes beyond the scope of the pleading. And if the case were to proceed, we would be able to come in and show that we never agreed to any, to change Section 6.3. There was no mutual mistake. But what I'm glad you. There was no intent to change it. Not Section 6.3. And so I'm glad you brought that up because that letter, if you look at it carefully, the letter talks about amending the definition of tenants pro rata share. Now, Section 6, tenants pro rata share is a defined term under the lease. Section 6.3, which is the section that is at issue here, what plaintiff wants to do is amend, is seeking to amend the definition of tenants proportionate share of real estate taxes. That's a separate term that's defined under the lease. The June letter only talks about making a modification or an amendment to the definition of tenants pro rata share. That's the defined term that deals with calculating common area expenses. That defined term appears nowhere in Section 6.3. So if you look at the complaint and say, and according to plaintiff, the letter was sent, according to plaintiff, the parties agreed to the change set forth in that letter, that's a specific allegation in this case. And then the allegation is the parties entered into the First Amendment. But there's no variance, there's no inconsistency between the letter and the First Amendment because the letter talks about making a change to the definition of tenants of pro rata share, not tenants proportionate share of real estate taxes. There's a key distinction between those two terms. That's very important. Your mistake was made strictly on Church Street. The mistake was made by then and there's no mutual mistake. That's correct, Your Honor. But you're arguing that there was only a mistake with respect to the definition. No, I'm not arguing that there was any mistake. I mean, this is on a dismissal. This is only a test. We're here on a dismissal. Okay. Our position is there was no mutual mistake at any point in time. Do you want me to proceed? Try. We're not going to reduce the amount of argument that you can make, Counsel. Yes. Let me take a step back because I don't want to get too far afield with the amendment. I'd like to start with the first lease agreement that was signed on February 23rd. Pardon? I didn't hear what you said. I want to start with the timeline here, okay? According to the complaint, the parties reached an agreement in August 1998. That's the letter of intent. It's attached as Exhibit A to the complaint. Now, obviously, I've made it clear. We're disputing that there was any mutual mistake, but we're here on dismissal, so I'm going to take their allegations as true. They allege, plaintiff alleges, that the parties agreed that Century would pay its proportionate share of real estate taxes and that that agreement was made in August of 1998 as reflected in the letter of intent. The parties then execute the lease agreement on February 23rd, 1999. According to plaintiff, that document contains a mistake in that it included the 185,000 square foot minimum denominator in the calculation for computing tenants' proportionate share of real estate taxes. Now, at that point in time, when the parties signed that document, every single element for a cause of action for reformation existed. We've got the two contracting parties. They signed the document. According to plaintiff, it contains a mutual mistake. At that point in time, under the law, a cause of action accrues when all the facts exist that entitle one party to bring the claim against the other party. So as of the execution of the document that contains section 6.3, that has the 185,000 minimum square foot denominator, that's the alleged mutual mistake that plaintiff is seeking to reform in this case. The trial court correctly held that's the starting point. That's when the cause of action accrues because at that point in time, the plaintiff could have filed its claim. The trial court specifically said, I'm filing Bainham. Yes. Okay. They had no choice, I think. They had to follow the existing law, which was Bainham. Right. So how does that help you or hurt you? Well, I think the court correctly followed Bainham because Bainham is the only Illinois appellate court case that deals with when a reformation claim accrues when the claim is between the two contracting parties. The Shands case is clearly distinguishable and went out of its way to distinguish Bainham because in Shands, the plaintiff in the reformation claim wasn't even a party to the contract. That was a case where the plaintiff was trying to reform an insurance policy, that she wasn't a party to that insurance policy. And so the court specifically went out of its way. It distinguished Bainham on that basis. I think the court did say that Bainham, the reasoning of Bainham may very well be applicable in a case where it's a claim between the two contracting parties. I mean, the Shands court said that. It's not good, does it? It is, Your Honors. But I think it's still relevant because it was the Shands court was distinguishing the facts before it from the facts that were presented in Bainham.  What about the language that he's referring to in Hamilton and Shands? I'm sorry? What about the language that says, in harsh results, if this can lead to the harsh results, the basic problem is one of balancing the increase in difficulty of proof which comes with passage of time to the hardship to the plaintiff. Well, I don't think there's a hardship. You saved a million dollars. Pardon me? You saved a million dollars. Well, I think that the hardship is actually to the defendant here because the purpose of the statute. The hardship benefited you $1 million and they got nothing. That's not a hardship? Well, they waited 11 years. They claim to have known of the mistake or to have recognized there was a mistake in June of 1999. We're now here 12 years later. So if there was such a hardship and such a concern, you think they might have come into court more than 12 years after they claimed to have known of the mistake. And I think that to allow a reformation claim to proceed 12 years after the original document was signed, I think that defeats the entire purpose of the statute of limitations. So we should not follow the discovery rule? I think that the Boehning court was correct in holding that when the reformation claim, you know, a reformation claim is an extraordinary relief. You're seeking to alter the terms of a written document. Parties enter into written contracts because they want certainty. And when you come in and you ask the court, no, that's not the agreement we reached. It's really something else. You already have 10 years. That's a pretty generous statute of limitations. To allow a plaintiff to come in and say, well, I didn't discover the alleged mutual mistake, which appeared on the face of the document, then you're going to extend that already generous 10 years indefinitely. So I think the reasoning and the rationale of Boehning is a good rationale and that it still allows a plaintiff 10 years, but it still protects the defendant from, you know, having to defend against a claim that accrued 12 years ago. So when you look at when did the cause of action accrue, when did the facts exist that allowed the plaintiff to bring this reformation claim, the reformation claim to amend section 6.3, that language appears in the February 23rd document, not the August document. And so, you know, plaintiff has argued that it's not February 23rd. That's not the relevant date. The relevant date is the August 20th, 1999 First Amendment. But what is it that they're seeking to reform? They're seeking to reform the language of section 6.3. That language is in the February 23rd document, not the August 20th, 1999 document. So the key date here, and the trial court said this claim stems from the February 23rd, 1999 document. And I think that was a correct holding. The language they want to change, the language they're seeking to alter, is in the document that was signed on February 23rd, not the August 20th, 1999 First Amendment. There was an argument made that Century's payment of a real estate tax bill in October 2001, that that told the statute of limitations. And first of all, I want to point out, that tax bill is attached as an exhibit to the complaint. The plaintiff has said, if you ask me what I want changed, what I would do is I would add a sentence or I would add a paragraph to change 185,000 square foot minimum denominator to 150,000 in section 6.3. That's what, according to plaintiff, that's what they're seeking to reform. If you take a look at the tax bill that's attached as exhibit E, the taxes in that bill aren't even calculated using a 150,000 minimum square foot denominator. So for a plaintiff to come in here and say they paid that bill, and that was in accordance with the language we're seeking to reform, it's not even calculated using the 150,000 square foot minimum denominator that they're saying should be included in that First Amendment. And even besides that, this is a reformation claim. This isn't a claim where plaintiff is saying we're suing you for nonpayment. A reformation claim, and the trial court's opinion clearly addressed this point, a reformation claim is distinct from a claim for nonpayment. And the statute, section 13-206, when you're seeking to establish a right, so they're seeking to reform the contract. They're not suing us for nonpayment. And the provision in the statute that says you can bring a claim 10 years if a payment has been made under the contract, that you can then make it 10 years after the payment, when you look at the language of the statute and the case law interpreting it, that provision is for claims of nonpayment, not when you're seeking to establish the right. And we cited case law in there involving pension plans, and when a party is seeking to establish a right under a pension plan, the right that that cause of action accrues when the document itself was established. You can't say, oh, well, I got some later pension payments under the plan, and now, therefore, that told the statute of limitations. And that same premise applies here. That case does not involve a mutual mistake? No, they don't. And I wanted to address the Hermitage case as well. That was the Supreme Court case, and plaintiff's counsel raised that as support for application of the discovery rule. And the Hermitage case did not involve a reformation claim, and so I think, you know, importantly, that's an important distinction. It was a statute of limitations, though, wasn't it? It was a statute of limitations case. They said literal application of the statute of limitations sometimes produced harsh results, and in response, the discovery rule was deployed. It says that. Yes. Does that help you? I don't think it helps me, but I also think it's a distinguishable case because in the Hermitage case, you know, like I said, it wasn't a reformation claim, and I think that courts are, you know, view reformation claims more, give them more scrutiny because of the fact that a party is coming in and asking the court to change the terms of a written document. So I don't think that that case is relevant, and I think the case that is relevant is the Boehning case because the facts are on par. You're saying we can't apply the discovery rule? Is that what you're saying? I'm saying that the court should not apply the discovery rule in a reformation claim when the claim is brought between the two contracting parties. The case law, there's two principles that I think are important in this analysis, and one is, you know, parties are presumed to have knowledge of the terms of contracts when they sign a contract, and parties enter into written contracts for certainty, and you take those two principles and you say when it's the two contracting parties involved in a reformation claim, you've got to hold the plaintiff to those standards. You've got to say, you know, when you sign a written contract, you're charged with knowledge of what's in there. So if there's a mutual mistake on the face of the document and you sign it, you're charged with knowledge of that mistake as of that date, and you can't, you know, say, well, I didn't discover it until much later. So you're saying there was a mutual mistake? I'm not saying there was. I'm saying plaintiff has alleged a mutual mistake. You signed off on the amendment, so at least that part you agreed to. We agreed to the First Amendment, and we signed that document, yes, and we agreed to the changes in that document, and it's our position that that document sets forth the entire, all of the amendments that we agreed to. So why shouldn't the date of that amendment be the date we used as to when we start to compute when the statute starts to run? Why should it not be? Right. Why shouldn't we use that date, the date of the amendment, as the date the statute of limitations starts? Well, the amendment itself doesn't change the effective date of the lease. I mean, I know Plaintiff's Counsel has relied on, has cited cases about the merger doctrine, and once an amendment, it's a new single document as amended, but it doesn't affect the date of the original document. That document was signed on February 23, 1999. The lease is still in existence as of that date. That's the date that has the language that the plaintiff is claiming is mistaken. So just because you sign a subsequent amendment doesn't now erase the past, doesn't erase history, doesn't mean the parties didn't sign the document on that date. The lease remained effective as of February 23, 1999. Surely if Century didn't pay under the lease before the amendment was signed, plaintiff would be coming in here suing for breach of the lease. So it's not like it just eviscerated the original date. So is your argument the amendment is a separate independent contract from the original contract? I don't think it's even, I think it's an irrelevant question when you're determining when the cause of action accrued. Now, if they were suing for breach of the lease for nonpayment or something like that, you know, you look at the whole document, you look at the lease as amended, but that doesn't, there's not one case that they cited applying the merger doctrine where it says just because there's an amendment, that now advances the accrual date. You've now undone the accrual date from before and now advanced it. And that, clearly that just can't be the case. Because if all the facts exist back in February 23, 1999, to file a lawsuit, so if they sign an amendment a month from now, they have 10 years from now. But you just indicated that both parties signed the amendment, right? That's correct. Okay. So the contract hasn't changed, even though there's an amendment? Well, the terms of the contract have changed, yes. They've been amended by what's in the First Amendment. But that doesn't undo the accrual date. That doesn't advance the effective date of the lease. The lease remained effective as of February 23, 1999. And the First Amendment did not change Section 6.3. That's what they want to reform. I think you have to look at what is the language they want to change. Where is that language? In this case, really, when does the statute of limitations start? Yes. That's the fundamental question. When did the reformation claim accrue? And the case law says, a cause of action accrues when all the facts exist that allow a party to maintain the claim. What are they asking for? You can look at their complaint. Well, that's what Bainon holds. But it seems to me that hermitage would arrive at a little different result because it teaches us we must determine when the injury occurred and when the wrongful conduct was caused. You know, there are a couple of things we've got to look at. I don't think the hermitage analysis really applies in a reformation claim. I mean, it's talking about when did the injury occur, when did you discover that there was an injury. I mean, that's not really at issue here in a reformation claim. Yes. Why shouldn't we apply? Because I think when you're talking about a reformation claim, that's between the two contracting parties, and I think that that's an important distinction, that the parties are charged with knowledge of the document. So under discovery, when did you know or when should you have known? I mean, so even if you do apply it, they should have known of the mistake when they signed it. They haven't alleged any facts. It's their burden to plead facts. We're talking about statute of limitations. Yes. And if we file hermitage or insurance, it would be anonymous, and we have to disagree with the second district. I don't agree with that, Your Honor. I respectfully disagree because – There was a mutual mistake, at least as to the amendment. No, there was no mutual mistake. So you're saying the amendment you didn't sign off on? Well, just because a party signs an amendment doesn't mean there was a mutual mistake. I mean, parties can decide to amend a contract without there ever having been a mutual mistake. And so there was an amendment signed that I think signing an amendment isn't tantamount to saying there's a mutual mistake. Parties amend contracts all the time without there ever having been a mistake. If the discovery rule is applied, if the court says, yes, we're going to – You're saying the amendment was not a mutual mistake. You're right. You're saying you didn't want to reform that part of the lease. Section 6.3? The amendment itself. Did you sign off on the amendment? We signed the amendment, yes. And the amendment changed the lease, did it not? The amendment changed the definition of tenants. Well, it did several things, but one of the things it did is it – If it's an amendment, why shouldn't we use that date of the amendment? Because the language they want to reform isn't in there. The language they want to reform is in the February 23rd document, the February 23rd, 1999 lease agreement. That's the language they're seeking to reform. So you have to look at when did the facts exist that allowed them to maintain that action? When were they entitled to seek reformation of Section 6.3 of the lease? And they were entitled to bring that claim on February 23rd, 1999. The statute of limitations expired on February 23rd, 2009. They filed their complaint in March of 2010. So they were over a year late. Even if the court were to apply the discovery rule, plaintiff has the burden of pleading facts to show that it should be applied, and they haven't met that burden. They say they discovered the mistake in June of 1999, but they don't say when. And they don't say why it would have taken them four months, over four months to discover the alleged mutual mistake, which appears on the face of the document. They must be lawyers. So even if the court decides not to follow Bainon and to follow Shands, then they still haven't met that burden, and they really can't meet that burden. When you look at the fact that they were a signatory to the contract, they're charged with knowledge of the contents of the document. They can't allege that they shouldn't have known of it sooner. Ms. Nielsen, you want to bring your argument to a conclusion? Yes, I will. Your Honors, again, I want to stress that you need to look at what their complaint is seeking, not what counsel now says they're seeking, but what is the complaint seeking. The complaint wants to change the language of Section 6.3. That language appears in the February 23rd document, and therefore I believe the trial court properly followed Bainon and held that cause of action accrued when the parties signed the contract on that date. Thank you. Thank you, counsel. Mr. Bainon, we have five minutes for rebuttal. Thank you, Your Honors. As to the pleading issue, that is what we asked for in our complaint, we asked in paragraph 25 for a reformation of the lease, which is a capitalized term which is defined in our complaint as the lease agreement as amended by the First Amendment to lease. That is an instrument, the lease that we are seeking to reform. Was there a mutual mistake or not? Yes, there was a mutual mistake, Your Honor. Every comment, why was there a mutual mistake? We have alleged that there was a mutual mistake because the parties agreed in August of 1999 that real estate taxes and common area expenses were both going to be computed on the basis of the actual area of this one building instead of all three buildings. That is, the minimum denominator was going to be based on the one building and not on the others, and that the First Amendment to lease correctly made the change with respect to expenses, but mistakenly did not make the change with respect to real estate taxes. The counsel is saying there is no mutual mistake. I am not surprised that she says that. That is what the trial of this lawsuit will be about, where the parties litigate over whether there was a mutual mistake. We have alleged that there was. It has to be assumed for the purposes of the motion to dismiss. The counsel made a lot out of the June 18th letter. We are not seeking to enforce the June 18th letter. We are seeking to enforce the agreement that the parties reached in August of 1999. It is possible that in February 1999, Church Street could have sued to reform the original lease agreement, but there was no reason to do so because when they realized that there was a problem with the lease, they talked to Century and Century agreed to make changes that were satisfactory to Church Street. They made a new agreement that was satisfactory to both sides. Everybody got a little something. That is the new agreement. That is what we are seeking to enforce. With respect to the tax bills and the subsequent payments that extended the commencement of the statute of limitations, Exhibit F to our brief is a tax bill that reflects tenants' proportionate share computed with a denominator of 150,000 square feet. It also shows payment of the taxes computed on that basis on May 17th, 2002. With respect to what language do we seek to change, an action for reformation is really asking the court to pick up the pen and change the words in some document. The relief that we are seeking should be accomplished by changing the words in the First Amendment to lease by adding to paragraph 2 and striking out 185,000 in paragraph 6.3 and substituting, therefore, 150,000. That was an instrument created in August of 1999. Your Honors, do you have no further questions? Thank you, Mr. Chairman. I want to compliment the attorneys on their arguments. This matter will be taken under advisory.